## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| STACY P. CHITTICK,<br>108 Lake Cook Dr.<br>Alexandria, VA 22304,<br><br>Individually and on behalf of all<br>others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEDOM MORTGAGE<br>CORPORATION,<br>A New Jersey Corporation,<br>907 Pleasant Valley Ave.<br>STE 3<br>Mt. Laurel, NJ 08054<br><br>and<br><br>NYCB Mortgage Company, LLC,<br>615 Merrick Ave.<br>Westbury, NY 11590<br><br>Defendants. | Civil Action No. __1:18-cv-1034__ (AJT/MSN)<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

COMES NOW Plaintiff, Stacy P. Chittick, and files this Complaint against Defendants

Freedom Mortgage Corporation and NYCB Mortgage Company, LLC and in support thereof

states as follows:

## JURISDICTION AND VENUE

1. The United States District Court for the Easter District of Virginia has jurisdiction of the federal claims herein under 28 U.S.C. § 1331 and 12 U.S.C. § 2614. This Court has jurisdiction of the included state claims under 28 U.S.C. § 1367(a).

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), and (c).

## THE PARTIES

3. Plaintiff, Stacy Chittick, is and was at all material times, a resident of the Commonwealth of Virginia, residing at 108 Lake Cook Dr., Alexandria VA 22304.

4. Defendant Freedom Mortgage Corporation ("Freedom Mortgage" or "Freedom") was the owner and servicer of the mortgage and loan secured by the real property located at 108 Lake Cook Dr., Alexandria VA 22304, after October 31, 2017 and during the time giving rise to this action. Freedom Mortgage has a principal place of business in Mt. Laurel, New Jersey and is incorporated in New Jersey.

5. Defendant NYCB Mortgage Company, LLC ("NYCB") was the mortgage lender and servicer of the loan secured by the aforementioned real property immediately prior to Freedom. In the alternative, based on a prior ruling of the United States District Court for the Eastern District of Virginia, NYCB was the RESPA "servicer" of Plaintiff's mortgage as well as RESPA servicer of any other member of the putative class whose property tax payments were due on or before November 30, 2017, pursuant to a purported agreement between Freedom and NYCB where NYCB allegedly promised

2

to make all property tax payments due on or before November 30, 2017, for all transferred mortgages, even though NYCB sold, and Freedom purchased, the ownership of the entire portfolio of transferred mortgages effective November 1, 2017. NYCB has a principal place of business in Westbury, New York and is a Delaware limited liability company present in the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

6. Stacy Chittick owns and resides at the single-family, residential property at 108 Lake Cook Dr., Alexandria VA 22304, and has owned said property at all relevant times during the events surrounding this claim.

7. The Lake Cook property has only been used for primarily residential purposes. Prior to October 31, 2017, NYCB was the lender, owner, and servicer of the mortgage loan secured by the aforementioned real property, a loan secured primarily for consumer purposes as Plaintiff's primary residence.

8. The mortgage required monthly payments on the loan, and the accompanying security instrument stated additional terms requiring payment to an escrow account for the purpose of assuring payment of all Alexandria City property taxes. At all relevant times up to and including the present, Chittick made all required payments, never missing a payment and never making a late payment.

9. The City of Alexandria has a two-installment payment of annual property taxes to be made as follows:  the first installment payment must be paid by June 15th and the second installment must be paid by November 15th.

10. NYCB made the first installment payment for 2017 but did not make the second installment payment due on November 15, 2017.

11. NYCB transferred the ownership of Plaintiff's mortgage, including the servicing of the loan, to Freedom Mortgage on October 31, 2017.

12. NYCB sent Chittick a letter dated on or around October 9, 2017, informing her that the servicing of her mortgage was being transferred, effective October 31, 2017, that Freedom Mortgage would be the new servicer as of November 1, 2017, and that she was to send all payments due on or after November 1, 2017 to Freedom. In Chittick also received a letter from Freedom advising her to make payments due on or after November 1, 2017, to Freedom Mortgage.

13. As directed, Chittick made a November mortgage payment to Freedom, which was received (effective date) by Freedom on November 3, 2017, twelve days before the second installment of the property tax for the City of Alexandria was due. This November payment included $559.74 for deposit into her escrow account, which was to be used in part to pay property taxes for the City of Alexandria. Neither Freedom Mortgage nor NYCB made the second installment payment of the 2017 Alexandria City property tax by the November 15th due date. The 2017 IRS Form 1098 that Chittick received from Freedom shows that Freedom made no disbursements at all from the escrow account in 2017.

14. The escrow account held more than enough funds to pay the second installment of the 2017 property tax by the November 15th due date—in part because of the November 3rd payment made to Freedom before the property tax was due.

15. The City of Alexandria assessed Chittick penalties for late payment. Also, because the property tax was not paid in the 2017 calendar year, Chittick could not itemize the unpaid property tax on her federal Schedule A, and as a result, she incurred significant additional federal and state income tax liability for the 2017 tax year. *See* Internal Revenue Service, 2017 Instructions for Schedule A (Form 1040) A-7 (2017) ("If your mortgage payments include your real estate taxes, you can deduct only the amount the mortgage company actually paid to the taxing authority in 2017."). Virginia conforms to the federal tax code for itemized deductions in 2017. *See* Va. Dep't of Taxation, 2017 Form 760: Resident Individual Income Tax Booklet 11 (2017).

16. The lost benefit of itemizing the 2017 property tax will not be recoverable in the 2018 tax year due to the recent changes in the tax code barring the itemized deduction of state income and property taxes exceeding $10,000. *See* Tax Cuts and Jobs Act, Pub. L. No. 115-97, sec. 11042(a), § 164(b)(6)(B), 131 Stat. 2054, 2086 (to be codified at 26 U.S.C. § 164(b)(6)(B)).

17. In January 2018, while preparing her taxes, Chittick realized that the property tax had not been paid.

18. Chittick attempted to coordinate with her new servicer, Freedom, to pay the property tax out of her escrow account. She began a communication odyssey with Freedom on January 29th by speaking with two of Freedom's customer care representatives and memorializing those conversations in a later email. Freedom employees advised her that the tax would not be paid until February 27, 2018, at the earliest—doubling the late penalty and increasing the interest due.

19. Paulino Lazo, a City of Alexandria accountant with the Finance Division, and NYCB representatives informed Chittick that Freedom had the responsibility to inform the City of Alexandria that it was Chittick's new servicer. Lazo indicated to Plaintiff that Freedom had failed to do this.

20. Frustrated, Chittick reached out to Gary Schiller, her mortgage broker, who acted as an intermediary and allowed Chittick access to Freedom employees that consumers would not ordinarily reach. One such employee, Jill Andonian, eventually reported to Chittick that NYCB was the party responsible for notifying the City of Alexandria of the servicing change.

21. Andonian reported on February 8, 2018, that Freedom, acting as servicer, "paid the penalty" for the late tax payment. However, as of February 26th according to Mr. Lazo, the City of Alexandria had still not been paid.

22. Chittick received a letter dated February 15, 2018 from Freedom stating, "The monthly payment for your loan with us referenced above includes a payment into an escrow account for the payment of real estate taxes, which means that the payment of these taxes is our responsibility." A copy of that letter is attached hereto as Exhibit A to the Complaint.

23. On February 19, 2018, Freedom sent Plaintiff a letter stating, "After reviewing your account, our research confirms that your loan was transferred to Freedom Mortgage from New York Community Bank NYCB as of November 1, 2017". In that letter, Freedom then admits that the "tax disbursement due date" [for the 2017 tax payment] was "inadvertently forwarded in error to 6/15/18 which caused [Plaintiff's 2017

property tax payment] to be missed." A copy of that letter is attached hereto as Exhibit B to the Complaint.

24. Chittick received a notice from the city postmarked March 6, indicating that the tax had still not been paid.

25. On March 13, Chittick received a voicemail from a self-described "customer service ambassador" for Freedom, asking her to return the call. Chittick returned the call promptly that day and every day for the next three days with no response from Freedom.

26. Chittick filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on March 16, 2018.

27. Freedom finally paid the tax on March 22, 2018.

28. As of now, neither NYCB nor Freedom have compensated Chittick for the tax liability in excess of the amount she otherwise would have paid had either NYCB or Freedom paid the property tax in 2017.

29. Due to her extraordinarily bad experience with Freedom, Chittick subsequently refinanced with another mortgage company to avoid having any further contact with Freedom. In doing so, she incurred refinancing costs and a higher interest rate as a result.

30. Neither NYCB nor Freedom have compensated Chittick for the costs incurred for the refinance, an amount she otherwise would not have paid had either NYCB or Freedom paid the property tax in 2017.

31. In June 2017, Freedom issued a press release announcing its acquisition of residential mortgage assets from NYCB. The release stated that the purchase brought Freedom

approximately $500 million of residential mortgage assets from NYCB and the "deal includes the right to service over $20 billion of residential mortgage loans."

32. In June 2017, Freedom issued a press release touting that it "originated 42.7 billion of [Veterans Administration] loans in the first quarter" of 2017.

33. A Virginia FOIA request to the City of Alexandria, answered by city law clerk Harold Washington on June 21, 2018, returned the names and addresses of thirteen other homeowners (fourteen total homeowners including Chittick) in the City of Alexandria alone for whom NYCB and Freedom failed to make timely payment of the November 15th property tax installment. The list of tax receipts, as provided by the City of Alexandria, is attached hereto as Exhibit C.

34. The FOIA responder noted that Freedom made the late payments and then listed the date that the City of Alexandria received the payment in the upper left hand corner of each tax receipt. In every case, payments included penalties and interest for late payment. In every case, the unpaid 2017 taxes could not, under IRS rules, be deducted on the homeowner's Federal income tax return or state income tax return.

35. Freedom, and in the alternative, NYCB, have thus engaged in a pattern of failing to make required payments from escrow and have accumulated a significant portfolio of failed payments.

36. Freedom has failed to make timely property tax payments in other jurisdictions as well. The Consumer Complaint Database, maintained on the official government website of the CFPB, provides a public record of complaints for consumers alleging that Freedom failed to make timely property tax payments. *See Consumer Complaint Database*,

CFPB, https://www.consumerfinance.gov/data-research/consumer-complaints/ (last visited August 9, 2018).

37. In just the first seven months of 2018, eleven CFPB complaints not including Chittick's—identified by a unique "Complaint ID"—specifically allege that Freedom failed to make timely property tax payments out of escrow accounts. These complaints come from Alabama, Connecticut, Georgia, Missouri, Florida, Kentucky, New Hampshire, Wisconsin, North Carolina, and Maryland. *Id.* Expanding a search to include 2016 and 2017 increases the number to well over fifty (50) complaints. *Id.* The eleven 2018 CFPB complaints downloaded directly into an excel spreadsheet from the above-cited website are attached herein as Exhibit D to the Complaint.

## COUNT I
### VIOLATION OF THE REAL ESTATE SETTLEMENT
### PROCEDURES ACT OF 1974, 12 U.S.C. § 2601 et seq.

38. Chittick realleges all the preceding allegations referenced as if set out here in full.

39. Section 6 of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), as amended, demands that the servicer of a federally related mortgage loan for residential property make timely payments of property taxes from escrow accounts for each such property as the taxes come due. 12 U.S.C. § 2605(g).

40. Chittick's loan is a federally related mortgage loan within the meaning of 12 U.S.C. § 2602(1)(A), and her loan was made for a non-business purpose—the financing of her permanent residence.

41. On November 1, 2017—the date on which Chittick's payment was first due to Freedom—Freedom Mortgage became the "servicer" of Chittick's loan as defined by

RESPA. In the alternative, based on this Court's prior ruling in a separate but similar action against Freedom only, as referenced in ¶ 5, NYCB remained the RESPA servicer through November 30, 2017 per an alleged private agreement between NYCB and Freedom.  Nonetheless, both NYCB and Freedom indicated to Chittick that Freedom would be the new servicer on November 1st, responsible for receiving all loan payments and making all property tax payments and other payments from escrow thereafter.

42. Freedom Mortgage violated RESPA, 12 U.S.C. § 2605(g), by failing to make timely property tax payments out of the escrowed funds that it controlled for mortgages that it owned, effective November 1, 2017.

43. In the alternative, NYCB violated RESPA, 12 U.S.C. § 2605(g), by failing to make timely property tax payments due and owing between November 1, 2017 and November 30, 2017.

44. At all times after November 1, 2017, Freedom has shown a pattern or practice of failing to make payments out of escrow accounts for the timely payment of taxes as those payments have become due.  In the alternative, for the period November 1, 2017 through November 30, 2017, NYCB has shown a pattern or practice of failing to make payments out of escrow accounts for the timely payment of taxes as those payments have become due.

45. RESPA makes violators of section 2605(g) liable to borrowers for any actual damages, as well as additional statutory damages if a pattern of noncompliance emerges. 12 U.S.C. § 2605(f). Costs and attorneys fees are also allowed. *Id*.

46. Chittick has suffered actual damages in penalties and interest (these were eventually paid), increased state and federal income tax liability, refinancing costs, and a higher interest rate on her new loan.

47. Chittick has suffered additional actual damages in stress and frustration, and the amount of time it took her to communicate with the City of Alexandria, NYCB, and Freedom in efforts to determine why her taxes were not paid and to demand Freedom pay the taxes and penalties before the City began a credit-damaging collections action.

48. Although Plaintiff primarily contends that Freedom, not NYCB, was the servicer after November 1st, 2017, Plaintiff pleads in the alternative that NYCB was the RESPA servicer from November 1, 2017 through and including November 30, 2017, which would have included the period that the second Alexandria, Virginia 2017 property tax payment was due.

## COUNT II
## BREACH OF CONTRACT

49. Chittick realleges and incorporates all the preceding allegations as if fully restated in this Count.

50. Under Virginia law, the security instrument's agreement to maintain an escrow account and to remit Chittick's owed property taxes to the City of Alexandria constituted a contract between Chittick and NYCB.

51. NYCB received, as valuable consideration, interest on the mortgage funds loaned and assurance that the property taxes and hazard insurance would be paid through the escrow account, reducing concerns about tax liens and insurance policy lapse.

52. Chittick received, as valuable consideration, funds to finance the property at 108 Lake Cook Dr., Alexandria VA 22304, and she also received the assurance that NYCB would ensure that taxes and insurance premiums would be paid in a timely manner.

53. Freedom Mortgage assumed from NYCB obligations attached to the mortgage loan, including the servicing of the mortgage loan, when it purchased the loan from NYCB. Thus, Freedom had an obligation as assignee of the contract, and as servicer after October 31st, to pay the property taxes in a timely manner out of the escrow account.

54. However, also under Virginia law, privity of contract remained between Chittick and NYCB after NYCB transferred the mortgage loan to Freedom. Thus, NYCB still had an obligation under the security instrument to insure timely tax payments, and NYCB breached that obligation by failing to ensure that escrow funds were used to make timely payments of property taxes as they became due.

55. Freedom and NYCB both breached their contractual obligations, causing harm to Chittick in the form of penalties, increased income tax liability, and refinance expenses.

## RESPA CLASS ACTION ALLEGATIONS

56. Plaintiff realleges and incorporates all the foregoing allegations as if fully set forth again in this section of the Complaint.

57. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings a RESPA action for herself and on behalf of a class (the "Class"), defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United Sates) who (a) had a residential mortgage loan obtained for primarily non-business purposes from any lender on real property within the

United States or its territories or other political subdivisions; (b) for which Freedom or NYCB were the mortgage loan servicer; and (c) for which Freedom and/or NYCB failed to remit property taxes to the applicable local jurisdictions from the property owner's escrow account in full and on time in 2017.

58. Pursuant to Fed. R. Civ. P. 23, Plaintiff also brings a RESPA action for herself and on behalf of a subclass (the "Subclass"), defined as:

All natural persons residing in the United States (including all territories and other political subdivisions of the United Sates) (a) who had a residential mortgage loan obtained for primarily non-business purposes from any lender on real property within the United States or its territories or other political subdivisions; (b) for which Freedom and/or NYCB was the mortgage servicer (c) for which Freedom and/or NYCB failed to remit property taxes to the applicable local jurisdictions from the property owner's escrow account in full and on time in 2017. and (d) who lost their 2017 local property tax deduction on their federal and/or state tax returns due to Freedom's or NYCB's failure to pay his/her/their local property taxes in 2017.

59. Specifically excluded from this Class and Subclass are

a. All persons who elect to exclude themselves from this Class;

b. All persons who have previously executed and delivered to Defendants a release of any claims that would otherwise be covered by the circumstances set forth in the definition of this Class above; and

c. Defendants' officers, directors, agents, representatives, and their immediate family members.

60. **Numerosity:** The Class is so numerous that joinder of all members is impracticable.

    a.  At this time, Plaintiff does not know the exact size of the Class.

    b.  Based on Freedom's own press release attached to the Complaint, it must have purchased at least hundreds of mortgages from NYCB.

    c.  Based on the information described earlier in the Complaint, Plaintiff believes that Freedom and/or NYCB failed to make timely property tax payments for a significant number, if not all, of the mortgages that Freedom purchased from NYCB in 2017.

61. **Commonality**: Common questions of law and fact exist as to all members of the Class.

    a.  The primary focus of the litigation will be on whether Freedom or NYCB breached its statutory duty to remit Class members' property taxes to the applicable local jurisdictions in a timely manner and whether Freedom or NYCB engaged in a pattern or practice of such behavior.

    b.  A finding that either or both Defendants failed in their statutory duty to any of the Class members will likely be applicable to all or almost all Class members.

    c.  A finding that either or both Defendant engaged in a pattern or practice of violating § 2605(g) will apply to every Class member.

62. **Typicality:** Plaintiff's claims are typical of the other members of the Class.

    a.  As discussed above as to the numerosity requirement, results of the City of Alexandria's FOIA request indicate that Freedom's or NYCB's failures in dealing with the NYCB transferred loans were systemic.

    b.  Including Freedom's numerous other nationwide failures to make timely payments from required escrow accounts, as indicated by the substantial

number of abovementioned complaints over the last three years, Freedom has shown a pattern of RESPA noncompliance with respect to all members of the Class.

c. All members of the Class suffered the same as Plaintiff Chittick in that their property taxes were not timely and properly paid in accord with their escrow agreements, thus incurring late fees, and regardless of whether Freedom or NYCB ultimately paid to reimburse any Class members for any fees or other actual damages, all members of the Class are entitled to statutory damages as per RESPA.

d. Damages suffered by each member of the Subclass may vary in that the tax consequences to each individual property owner will be different based on the individual's taxable income, filing status, other deductions, etc. Plaintiff alleges that these variations in this one aspect of damages can be resolved in the damages phase of litigation. Plaintiff further alleges that the issues on which Plaintiff's claims and damages are typical of other members of the Class predominate over any non-typical individualized issues of any class members.

63. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class.

a. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests.

b. Plaintiff has retained counsel experienced in complex, commercial, and large class action litigation.

54. This matter may be maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(3) in that questions of law and fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy

WHEREFORE, Plaintiff Stacy Chittick requests the following:

(a) That this Court certify the proposed Class and subclass;

(b) That this Court designate Plaintiff Chittick as Class representative;

(c) That this Court designate undersigned counsel as Class counsel;

(d) That this Court grant actual damages and statutory damages under 12 U.S.C. § 2605(f) on a common fund basis to Plaintiff and the putative class, or in the event, that the class and/or subclass is not certified, individually to Plaintiff; and

(e) That this Court order other further reasonable relief including costs and attorneys' fees.


JURY TRIAL DEMANDED

Respectfully submitted,


_____/s/_____
John J. Beins
VA Bar #35435
Beins Goldberg LLP
2 Wisconsin Circle
Suite 700
Chevy Chase, MD 20815
240.235.5040
jbeins@beinsgoldberg.com


_____/s/_____
Justin P. Keating
VA Bar #75880
Beins, Axelrod, P.C.
1717 K Street NW
Suite 1120
Washington, DC 20006
202.328.7222
jkeating@beinsaxelrod.com